1

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
info@gauntlettlaw.com
James A. Lowe (SBN 214383)
jal@gauntlettlaw.com
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050

2

3

4

5

6

Attorneys for Plaintiff
MY CHOICE SOFTWARE and
NATHAN DAVID MUMME

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SOUTHERN DIVISION**

11

12

13

14

15

16

17

18

19

20

21

| | |
|---|---|
| MY CHOICE SOFTWARE, LLC, a California limited liability company, and NATHAN DAVID MUMME, an individual,<br><br>                Plaintiffs,<br><br>    vs.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br>a Connecticut corporation,<br><br>              Defendant. | Case No.:  19-2695<br><br>**COMPLAINT FOR:**<br>**(1)  DECLARATORY JUDGMENT**<br>**(2)  BREACH OF CONTRACT**<br>**(3)  EQUITABLE CONTRIBUTION OR EQUITABLE SUBROGATION**<br>**(4)  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

22

23

24

25

26

27

28

In this insurance coverage case, Plaintiffs My Choice Software, LLC and Nathan David Mumme (collectively hereinafter "Plaintiffs") sue their general liability insurer, Defendant Travelers Casualty Insurance Company of America (hereafter "Travelers"), for a declaratory judgment that Travelers had a duty to defend My Choice in the underlying litigation styled as *Trusted Tech Team, Inc. et al. v. My Choice Software, LLC et al.*, Case No. 30-2017-00916709-CU-BT-CJC, in the Superior Court of the State of California for the County of Orange (the "*Trusted Tech Action*"); that Travelers breached its contractual obligation to fully and properly defend My Choice and to promptly reimburse defense expenses for the *Trusted Tech Action;* that Travelers must promptly reimburse My Choice for defense expenses it incurred in that action, plus prejudgment interest at the applicable legal rate from the date of each defense invoice; and that Travelers must promptly reimburse My Choice, as assignee of Continental Casualty Co.'s ("Continental") equitable claims, for the defense expenses that Continental paid.

Additionally, My Choice seeks damages from Travelers for breach of its duty of good faith and fair dealing in connection with its failure to defend My Choice in the *Trusted Tech Action*

## **THE PARTIES**

1.     Plaintiff My Choice Software, LLC ("My Choice") is a California limited liability company with its principal place of business in Orange County, California.

2.     Plaintiff Nathan David Mumme ("Mumme") is a member, manager, and Chief Executive Officer of My Choice Software, LLC and resides in Orange County, California.

3.     On information and belief, Defendant Travelers Casualty Insurance Company of America is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

4.     On information and belief, Travelers transacts business nationwide, including in the state of California and in the Central District of California.

**JURISDICTION**

5.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and for breach of contract.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity of citizenship exists between the parties. My Choice has a principal place of business in Orange County, California and the only member of the limited liability company, Nathan David Mumme, is a resident of Orange County, California; therefore, both Plaintiffs are citizens of California. Travelers is a Connecticut corporation and has its principal place of business in Hartford, Connecticut; therefore, Travelers is a citizen of Connecticut. The parties have diverse citizenship.

7.      The amount in controversy exceeds the sum or value of $75,000, including defense expenses sought in this suit, exclusive of interests and costs. In addition to other and further relief, declaratory relief is sought in this suit.

**VENUE AND CHOICE OF LAW**

8.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

9.      This Complaint concerns a contract for liability insurance issued by Travelers, which contract was sold and delivered in the Central District of California.

10.      On information and belief, Travelers is an insurance company licensed to sell and actively selling insurance policies in California, including within the Central District of California.

11.      Travelers sold the insurance policy at issue in this case to Plaintiff My Choice, which resides and operates in the Central District of California where the policy was delivered.

12.      The territory of coverage of the Travelers policy at issue covered Plaintiffs' business operations in the Central District of California, as well as

throughout the United States.

13.    The underlying action for which My Choice seeks defense, the *Trusted Tech Action*, was filed and litigated in the Central District of California.

14.    The alleged wrongful conduct described in the pleadings of the *Trusted Tech Action* and potentially covered by the Travelers' policy purportedly occurred within the Central District of California.

15.    The performance required under the Travelers policy at issue, including, without limitation, the defense of the *Trusted Tech Action*, the payment of attorneys' defense fees, and the settlement of the Trusted Tech claim, occurred within the Central District of California, as Travelers owed a duty of defense to its insureds in the Central District of California.

## THE TRAVELERS POLICIES

16.    Travelers issued to My Choice primary commercial general liability policies (№s. 680-1G470639-15-42 and 680-1G470639-16-42) with policy period from July 20, 2015 through July 20, 2017, using essentially the same policy forms (the "Policy"). A copy of the 2015 to 2016 general liability Policy is attached as **Exhibit "1."**

17.    Travelers' "Technology Office Pac" Policy provides coverage for "'personal and advertising injury' caused by an offense arising out of [the insured's] business but only if the offense was committed in the 'coverage territory' during the policy period." [**Ex. 1 (Policy) § I.B.1.b**].

18.    The pertinent Insuring Agreement from the Policy's main "Technology Office Pac" Coverage Form No. CG 00 01 10 01 is as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

1    [**Ex. 1 (Policy) § I.B.1.a**].

2         19.    The pertinent provision on "Who Is An Insured" with regard to an

3    insured who is an LLC provides:

4                    If you are designated in the Declarations as … [a] limited

5                    liability company, you are an insured. Your members are

6                    also insureds, but only with respect to the conduct of your

7                    business. Your managers are insureds, but only with respect

8                    to their duties as your managers.

9    [**Ex. 1 (Policy) § II.1.c**].

10        20.    The original version of the "Infringement of Copyright, Patent,

11   Trademark Or Trade Secret" exclusion in the Policy coverage form provides:

12                   This insurance does not apply to … "[p]ersonal and

13                   advertising injury" arising out of the infringement of

14                   copyright, patent, trademark, trade secret or other

15                   intellectual property rights.

16

17                   However, this exclusion does not apply to infringement, in

18                   your "advertisement", of copyright, trade dress or slogan.

19   [**Ex. 1 (Policy) § I.B.2.i**].

20        21.    The above exclusion was replaced in the Policy's "Amendment of

21   Coverage B – Personal and Advertising Injury Liability – Technology"

22   ("Amendment"), Coverage Form No. CG D4 36 01 15, to be an "Intellectual

23   Property" exclusion that excluded:

24                   "Personal injury" or "advertising injury" arising out of any

25                   actual or alleged infringement or violation of any of the

26                   following rights or laws or any other "personal injury" or

27                   "advertising injury" alleged in any claim or "suit" that also

28                   alleges any such infringement or violation:

(1) Copyright;

(2) Patent;

(3) Trade dress;

(4) Trade name;

(5) Trademark;

(6) Trade secret; or

(7) Other intellectual property rights or laws.

This exclusion does not apply to:

(1) "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

(2) Any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

[**Ex. 1 (Policy - Amendment) § E.6**].

22.     Pertinent definitions from the Policy's original coverage form include:

14. "Personal and advertising injury" means injury… arising out of one or more of the following offenses:

…

c.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]

* * *

18. "Suit" means a civil proceeding in which damages because of … "personal and advertising injury" to which

this insurance applies are alleged.

[**Ex. 1 (Policy) §§ V.14, 18**].

23.   The "personal and advertising injury" definition was replaced in the Amendment:

> The following replaces the definition of "personal and advertising injury" in the DEFINITIONS Section:
>
> "Personal and advertising injury" means "personal injury" or "advertising injury".

[**Ex. 1 (Policy - Amendment) § A**].

24.   The Amendment's provisions further include additional definitions:

> "Advertising injury":
>
> a. Means injury, other than "personal injury", caused by one or more of the following offenses:
>
> (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;
>
> (2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:
>
> …
>
> (b) Unreasonably places a person in a false light[.]
>
> * * *
>
> "Personal injury":

a.  Means injury, other than "advertising injury", caused by one or more of the following offenses:

…

(4) Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

(5) Oral or written publication, including publication by electronic means, of material that:

…

(b) Unreasonably places a person in a false light.

[**Ex. 1 (Policy - Amendment) § H**].

25.    Where coverage is available, Travelers' "Other Insurance" provisions provide that it is a primary policy:

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

[**Ex. 1 (Policy) § IV.4.a**].

## THE UNDERLYING TRUSTED TECH ACTION

26.    On June 9, 2017, Trusted Tech Team, Inc., Julian Kamal Hamood, and Nicholas Patterson Masters filed a Cross-Complaint against My Choice Software, LLC and Nathan David Mumme in the Superior Court of the State of California for

the County of Orange, Case No. 30-2017-00916709-CU-BT-CJC (the "*Trusted Tech Action*"). A copy of the Cross-Complaint is attached as **Exhibit "2."**

27.  Pertinent allegations from the Cross-Complaint include:

27. Mumme and My Choice have also attempted to directly interfere with Trusted Tech Team's business relationships by sending disparaging and libelous communications to Trusted Tech Team's vendors and/or business partners. The disparaging communications to Trusted Tech Team's partners allege that Hamood and Trusted Tech Team have engaged in software piracy and the unauthorized sale or resale of black market or gray market software authentication keys.

28. Because of the ephemeral nature of software authentication keys, software key vendors, sellers, and resellers must carefully guard their reputation. False accusations of illicit activity with respect to software keys can permanently damage the reputation of a participant in the marketplace, and can result in the severing of business relationships and blackballing by other market participants.

29. On information and belief, Mumme and My Choice sent false and disparaging email and telephone communications to Trusted Tech Team's partners, including S-Tech IT Security Solutions, Inc. ("S-Tech"), Tech Data Corporation ("Tech Data"), and JSG Holdings, Inc ("JSG"). These business are well-known software distributors whose cooperation is important to the success of Trusted Tech Team. Mumme and My Choice targeted these companies in particular because they knew that Trusted Tech Team had

engaged in business dealings with those companies; Mumme and My Choice intended by the communications to damage the future business relationship Trusted Tech Team had with its distributors, to the detriment of Trusted Tech Team.

30. Mumme's false and disparaging communications included an email to S-Tech in which Mumme stated that Trusted Tech Team employee Nick Masters had been fired from My Choice [sic] for stealing inventory. Mumme made similar false and unfounded allegations in communications with JSG; specifically, Mumme told JSG that Masters and Hamood had stolen over $100,000 in inventory from him. Both of these allegations are false, and were known to be false by Mumme when he made them. Moreover, because all parties involved knew that Hamood and Masters were then working for Trusted Tech Team, Mumme knew or intended that the allegations of bad actions against Hamood and Masters would be imputed to Trusted Tech Team.

31. Following Mumme's false statements to Trusted Tech Team's vendors, Trusted Tech Team experienced adverse reactions from the vendors, including unfavorable changes in billing terms, and reluctant or refusal to enter into business transactions with Trusted Tech Team on the part of the vendors. Trusted Tech Team has since had to secure alternate vendors due to the interference by Mumme and My Choice.

…

48. Cross-Complainant Trusted Tech Team and third parties S0tech IT Security Solutions, Inc., Tech Data Corporation,

and JSG Holdings, Inc. were in ongoing economic relationships that probably would have resulted in an economic benefit to Trusted Tech Team.

49. Cross-Defendants were aware of the relationship between Trusted Tech Team and S-Tech IT Security Solutions, Inc., Tech Data Corporation, and JSG Holdings, Inc.

50. Cross-Defendants engaged in wrongful conduct with respect to this relationship in that Cross-Defendants sent emails or made verbal statements to S-Tech IT Security Solutions, Inc., Tech Data Corporation, and JSG Holdings, Inc. containing untrue allegations regarding Trusted Tech Team's business activities, and disparaging Trusted Tech Team and its employees Julian Hamood and Nick Masters.

…

52. As a result of Cross-Defendants' conduct, the relationship between Trusted Tech Team and S-Tech IT Security Solutions, Inc., Tech Data Corporation, and JSG Holdings, Inc. was disrupted, which disruption caused harm to the business of Trusted Tech Team.

…

56. Cross-Defendants have made false statements that did or would be understood to have disparaged the quality of Trusted Tech Team's business services and the character of Trusted Tech Team's employees, as described above. The disparaging statements were made to a person other than an officer or employee of Trusted Tech Team.

57. Cross-Defendants knew that the statements were untrue

at the time they were made, and knew or should have recognized that others would act in reliance on the false statements, causing Trusted Tech Team financial loss.

58. Cross-Complainant Trusted Tech Team did in fact suffer direct financial harm caused by Cross-Defendants' false statements because others acted in reliance on the false statements, and stopped doing business with Trusted Tech Team or withdrew a portion of their business from Trusted Tech Team.

…

92. Cross-Defendant Mumme, for himself or on behalf of My Choice, made false and defamatory statements about Trusted Tech Team and its employees Masters and Hamood to third parties, including but not limited to S-Tech IT Security Solutions, Inc., Tech Data Corporation, and JSG Holdings, Inc. The statements falsely implied or stated that Hamood and Masters had stolen or misappropriated property belonging to My Choice Software.

93. Because the statements stated or implied that Cross-Complainants Hamood and Masters had committed crimes, the statements constituted defamation per se. The persons to whom the statements were made reasonably understood that the statements were about Hamood and Masters, and were meant to impugn their character.

…

WHEREFORE, Cross-Complainants pray for judgment against defendants, and each of them, as follows:

1. For compensatory and punitive damages for Cross-

Defendants' intentional interference, in an amount to be determined at trial;

2. For compensatory and punitive damages for Cross-Defendants' trade libel;

…

5. For exemplary and punitive damages, disgorgement of profits, and for injunctive relief from Cross-Defendants' acts of unfair competition;

6. For disgorgement of profits acquired by Cross-Defendants' by virtue of their acts of unfair competition;

…

12. For attorney fees and costs according to proof as alleged in the causes of action provided herein;

13. For prejudgment interest [on] all amounts claimed; and

14. For such other and further relief as the Court deems just and proper.

## **TRAVELERS ADMISSION OF DUTY TO DEFEND**

28.     After the *Trusted Tech Action* was filed in the Superior Court, My Choice and Mumme gave timely notice of the suit to Travelers.

29.     On March 27, 2018, Travelers agreed "to participate in My Choice's defense against the cross-complaint asserted by Trusted Tech Team, Inc., Julian Kamal Hamood, and Nicholas Patterson Masters." Attached as **Exhibit "3"** is a copy of the March 27, 2018 Reservation of Rights Letter.

30.     In the reservation of rights letter, Travelers acknowledged that "[t]he allegations in the Cross-Complaint include allegations that could constitute disparagement or trade libel" and "[a]ccordingly, Travelers will participate in the defense of the Cross-Complaint." [**Ex. 3 p. 9**].

31.     Travelers further advised that given its reservation of rights, "My Choice

is entitled to select defense counsel pursuant to California Civil Code §2860 rather than having counsel appointed by Travelers." [*Id.* **p. 11**].

32.    Travelers quotes the language of the amended Intellectual Property Exclusion in its recitation of potential exclusions in its reservation of rights letter. It recognized that My Choice had filed suit against the *Trusted Tech* claimants, including allegations that *Trusted Tech* claimants "stole sensitive client information from My Choice, including client information, marketing materials, product key codes, and other proprietary information." [*Id.* **p. 10**].

33.    Despite the allegations, Travelers did not assert that the Intellectual Property Exclusion barred coverage for the insured or eliminated Travelers' duty to defend it in the *Trusted Tech Action*.

34.    Travelers agreed to pay defense expenses in the *Trusted Tech Action*.

## TRAVELERS' IMPROPER WITHDRAWAL

35.    On May 31, 2018, Travelers withdrew its participation in the defense of the *Trusted Tech Action* asserting, for the first time, that because My Choice Software, LLC filed a First Amended Complaint on April 20, 2018 alleging misappropriation of trade secrets against the defendants, the amended Intellectual Property Exclusion was triggered. Attached as **Exhibit "4"** is a copy of Travelers' May 31, 2018 letter.

36.    Travelers' May 31, 2018 letter said that "the allegations of the First Amended Complaint trigger the intellectual property exclusion in the Travelers policy, and Travelers is accordingly withdrawing from the defense of the Cross-Complaint against My Choice." [**Ex. 4 p. 1**].

37.    Travelers quoted its amended Intellectual Property Exclusion and provided a three-line explanation of the application of facts in the case to its exclusion. "My Choice's First Amended Complaint filed on April 20, 2018 alleges misappropriation of trade secrets against all defendants. The addition of that claim to the suit triggers the exclusion[.]" [*Id.* **p. 2**].

38.    Travelers' withdrew its defense based only on a claim that was not made

against any insured and which Travelers did not have to defend.

39. After Travelers withdrew its defense, the insured sent a letter to Travelers on June 15, 2018, requesting a reconsideration of Travelers' withdrawal on the basis that Travelers' contention is inconsistent with a fair reading of the amended Intellectual Property Exclusion. Attached as **Exhibit "5"** is a copy of the June 15, 2018 letter.

40. Travelers reiterated its rejection for reconsideration in its October 19, 2018 letter, claiming that "[t]he policy language is clear, and does not require that the intellectual property allegations be made against the insured." Attached as **Exhibit "6"** is a copy of the October 19, 2018 letter.

## **"OTHER INSURANCE"**

41. On August 3, 2018, Continental Casualty Co. agreed to defend the *Trusted Tech Action* under its Technology Errors & Omissions Policy No. B 6012141650. Attached as **Exhibit "7"** is a copy of Continental's "Other Insurance Endorsement."

42. The "Other Insurance Endorsement" provides:

> 1. If there is other insurance covering the same "damages" or "defense costs," we will pay only for the amount of covered "damages" or "defense costs" in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

> 2. When this insurance is excess, we will have no duty under this Coverage Form to defend any "claim" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

[**Ex. 7 (Other Insurance Endorsement) § IV.8.1-2**].

## SETTLEMENT AND ASSIGNMENT

43.    On January 7, 2019, a mediation was held between the parties in the *Trusted Tech Action*. Notice of this mediation was given to Plaintiffs' relevant insurers, including Travelers.

44.    In attendance at the mediation were My Choice's defending insurers with the sole exception of Travelers.

45.    During the mediation, the *Trusted Tech Action* was settled.

46.    Thereafter, My Choice sought defense payments, including for those incurred "conducted against liability," from a defending insurer, Continental Casualty Company ("Continental").

47.    In a resolution to the issue as between Continental and Plaintiff, Continental paid a portion of the defense expenses conducted against liability and assigned to Plaintiffs all of Continental's recovery rights as to any amounts paid under the Continental Policy for the *Trusted Tech Action*.

## COUNT I

## DECLARATORY RELIEF – DUTY TO DEFEND

48.    Plaintiffs incorporate the allegations in the above paragraphs of this Complaint as though alleged herein.

49.    Plaintiffs have fully performed all of the obligations and conditions to be performed by them under the Policy and/or have been excused from performing the same as a result of Travelers' breach of its duty to defend.

50.    Plaintiffs have paid premiums owed under the Policies each month the Policies have been in force.

51.    By issuing and delivering the Policy and taking payments from Plaintiffs, Travelers agreed to provide a defense for a suit alleging, among other things, a claim for a personal injury or advertising injury, such as slander, libel, disparagement or defamation. Travelers agreed to pay for Plaintiffs' defense expenses in such suits.

52.    Travelers' Policy potentially covers the allegations against My Choice

and Mumme in the *Trusted Tech Action*.

53.     No exclusions would bar Travelers from defending the Plaintiff in the *Trusted Tech Action*.

54.     Travelers is obligated under the Policy to defend the Plaintiffs by paying attorneys' fees and costs that Plaintiffs incurred in the defense of the *Trusted Tech Action*.

55.     Travelers has wrongfully failed to fully and properly defend Plaintiffs in the *Trusted Tech Action* under its Policy. It has wrongfully failed to promptly reimburse Plaintiffs for defense expenses.

56.     An actual bona fide controversy exists between Plaintiffs, on the one hand, and Travelers, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties. Namely, the parties disagree about whether Travelers had a duty to defend Plaintiffs in the *Trusted Tech Action* and to pay all of the reasonable attorneys' fees and costs Plaintiffs incurred in defending the lawsuit.

<u>**COUNT II**</u>

<u>**BREACH OF CONTRACT**</u>

57.     Plaintiffs incorporate the allegations in the above paragraphs of this Complaint as though alleged herein.

58.     Plaintiffs entered into a valid contract with Travelers, the terms of which are memorialized in the Policy.

59.     Plaintiffs have fully performed all of the obligations and conditions to be performed by them under the Policy and/or have been excused from performing the same as a result of Travelers' breach of its duty to defend.

60.     By selling the Policy, Travelers agreed to provide a defense for a suit alleging, among other things, a claim for a personal and advertising injury, such as slander, libel, disparagement or defamation. Travelers agreed to pay for Plaintiffs' defense expenses in such suits.

61.     The *Trusted Tech Action* Cross-Complaint alleges facts implicating the

"personal injury" and "advertising injury" coverage under the Policy, thereby triggering Travelers' obligation to defend Plaintiffs, as Travelers initially admitted and then later denied.

62.     Travelers failed to provide and pay for a defense in the *Trusted Tech Action*.

63.     Despite a request for reconsideration of its withdrawal, Travelers refused to provide the contracted duty of defense to Plaintiffs.

64.     Travelers breached its duties to defend the Plaintiffs under the Policy of insurance it sold to My Choice.

65.     As a result of the breach, Plaintiffs did not receive the benefit of the Policy it contracted for as it incurred defense expenses in defending against claimant's allegations of wrongful conduct that Travelers did not pay.

66.     Plaintiffs suffered damages from Travelers' breach of contract by having to pay defense expenses itself.

<u>**COUNT III**</u>

<u>**EQUITABLE CONTRIBUTION OR SUBROGATION**</u>

67.     Plaintiffs incorporate the allegations in the above paragraphs of this Complaint as though alleged herein.

68.     Plaintiffs entered into a valid contract with Travelers, the terms of which are memorialized in the Policy.

69.     Plaintiffs have fully performed all of the obligations and conditions to be performed by them under the Policy and/or have been excused from performing the same as a result of Travelers' breach of its duty to defend.

70.     The *Trusted Tech Action* Cross-Complaint alleges facts implicating the "personal injury" and "advertising injury" coverage under the Policy, thereby triggering Travelers' obligation to defend Plaintiffs, as Travelers admitted and then denied.

71.     The Travelers Policy was the primary insurance policy with a duty to

defend.

72.    Under Travelers and Continental policies' respective "Other Insurance" provisions, Continental would be either a contributing primary insurer or excess insurer to Travelers policy for the *Trusted Tech Action*.

73.    Travelers failed to provide and pay for a defense in the *Trusted Tech Action*.

74.    Because Travelers failed to pay defense expenses that it had a duty to pay, Continental paid some of Plaintiffs' defense expenses in the *Trusted Tech Action* in accordance with its apparent duty to defend.

75.    To the extent Continental paid defense expenses in the *Trusted Tech Action* that Travelers had a primary duty to pay, Travelers owes either contribution or complete reimbursement of those expenses to Continental.

76.    Travelers' failure to pay for defense expenses in accordance with its duty to defend caused Continental to suffer damages.

77.    Continental is entitled to equitable contribution or subrogation from Travelers, the provision of which is required by justice, for the defense expenses it paid that Travelers had an obligation to pay as the primary insurer.

78.    Continental assigned to Plaintiffs all of its recovery rights as to any amounts paid under the Continental Policy for the *Trusted Tech Action* that should have been paid by Travelers.

79.    Plaintiffs are entitled to the equitable contribution or subrogation from Travelers owed to Continental for Continental's payments of defense expenses in the *Trusted Tech Action*.

## <u>COUNT IV</u>
## <u>BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</u>

80.    Plaintiffs incorporate the allegations in the above paragraphs of this Complaint as though alleged herein.

81.    In the withdrawal of defense, Travelers argued that "the addition of [the

misappropriation of trade secrets] claim triggers the [amended Intellectual Property] exclusion, and Travelers is withdrawing from the defense of My Choice effective with the filing of [My Choice's] First Amended Complaint." [**Ex. 4 p. 2**]

82.    In My Choice's response letter requesting reconsideration of Travelers' improper withdrawal, My Choice explained that the amended Intellectual Property exclusion cannot bar a defense because Travelers' reading is inconsistent with a fair reading of its provisions. [**Ex. 5 p. 1**]

83.    Travelers' proposed interpretation of the amended Intellectual Property exclusion was unreasonable. But even if it were reasonable, it was not the only reasonable interpretation.

84.    Despite My Choice's explanation of a reasonable interpretation of the exclusion, Travelers rejected the request for reconsideration.

85.    In its rejection, Travelers reiterated its reasoning based on the same interpretation it proffered in its May 31 withdrawal from defense.

86.    Travelers did not provide other reasoning.

87.    Travelers did not answer My Choice's interpretation or other proffered arguments.

88.    Travelers did not submit the duty of defense to an adjudication before it decided on its own to withdraw and stop paying for a defense.

89.    Despite being invited to the mediation, along with Continental, Travelers did not attend.

90.    Travelers' unreasonable conduct in the withdrawal of a defense in the *Trusted Tech Action* was a breach of its implied duty of good faith and fair dealing.

91.    Plaintiffs are entitled to an adjudication of liability for breach of the covenant of good faith and fair dealing on the grounds that the amended Intellectual Property exclusion cannot bar a defense and that Travelers' actions in withdrawing from the defense was improper and a breach of Travelers' duty of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Travelers as follows:

1.  A judicial declaration that Travelers had a duty to defend Plaintiffs and to pay their reasonable defense costs under the Policy against the claims asserted in the *Trusted Tech Action*.

2.  A judgment that Travelers has breached its contractual duties;

3.  A determination and award of general damages consisting of all reasonable defense expenses and settlement expenses incurred by My Choice and Mumme in defense of the underlying *Trusted Tech Action* and any consequential damages;

4.  A determination and award from Travelers consisting of all of Continental's payments under the Policy in defense of the *Trusted Tech Action* in accordance with either the doctrine of equitable contribution or equitable subrogation;

5.  Award of pre-judgment interest accruing from the date of each defense invoice or any settlement payment at the statutory interest rate of 10% per annum;

6.  Award of damages for Travelers' breach of its duty of good faith and fair dealing.

7.  Award of costs of suit herein;

8.  Attorneys' fees incurred in this coverage case, as well as in the *Trusted Tech Action*, as permitted by law; and

9.  Such other and further relief as this Court may deem just and proper.


Dated:  April 9, 2019                     **GAUNTLETT & ASSOCIATES**


By:_____/s/ James A. Lowe_____
          David A. Gauntlett
          James A. Lowe

Attorneys for Plaintiff
MY CHOICE SOFTWARE and
NATHAN DAVID MUMME

1

## **JURY DEMAND**

2

3        Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby request a trial by jury of issues

4   triable by a jury.

5

6   Dated:  April 9, 2019                          **GAUNTLETT & ASSOCIATES**

7

8                                                  By:_____/s/ James A. Lowe_____
                                                         David A. Gauntlett
9                                                        James A. Lowe

10                                                 Attorneys for Plaintiff
                                                   MY CHOICE SOFTWARE and
11                                                 NATHAN DAVID MUMME

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28